*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

─────────────

**UNITED STATES**
Appellee

**v.**

**David L. JERKINS, Major**
United States Army, Appellant

**No. 17-0203**
Crim. App. No. 20140071

Argued November 28, 2017—Decided February 8, 2018

Military Judge: Rebecca Connally

For Appellant: *Robert A Feldmeier,* Esq. (argued)*; Captain Cody Cheek* and *James S. Trieschmann,* Esq. (on brief).

For Appellee: *Captain Allison L. Rowley* (argued)*; Lieutenant Colonel A. G. Courie III* and *Major Melissa Dasgupta Smith* (on brief); *Major Michael E. Korte.*

Chief Judge STUCKY delivered the opinion of the Court, in which Judge SPARKS and Senior Judge EFFRON joined. Judge OHLSON filed a separate dissenting opinion, in which Judge RYAN joined.

─────────────

Chief Judge STUCKY delivered the opinion of the Court.

We granted review to decide whether the military judge abused her discretion by admitting a general officer memorandum of reprimand (GOMOR) into evidence during sentencing rebuttal. We hold that she did, as the evidence invaded the province of the court-martial.

## I. Procedural History

A general court-martial panel convicted Appellant, contrary to his pleas, of one specification of assault consummated by a battery upon a child, his three-year-old stepson, by striking him on the back, arms, and buttocks with a belt, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012). The panel sentenced Appellant to a dismissal from the service and confinement for six months. The convening authority approved only so much of

the sentence as provided for a dismissal and confinement for five months.

Appellant assigned six issues before the United States Army Court of Criminal Appeals (CCA). The CCA found only one of the six issues, not the one on which we granted review, merited discussion. It affirmed the findings and sentence. *United States v. Jerkins*, No. ARMY 20140071, slip op. at 5 (A. Ct. Crim. App. Nov. 30, 2016).

## II. Background

During the sentencing hearing, the Government's initial case in aggravation consisted of testimony from the victim's father (TRB) and the introduction into evidence of Appellant's Official Military Personnel File (OMPF). TRB testified that he had previously complained to the boy's mother about Appellant and her mistreating the boy.

Among the otherwise excellent officer evaluation reports (OER) in his OMPF was one for a two-year period ending in November 2011, during which Appellant was deployed to Kuwait. In it, his rater stated that Appellant's duty performance during combat operations was unsatisfactory, having "dramatically decreased" once he was notified of his pending reassignment to a unit serving in Afghanistan. Appellant's intermediate and senior raters concurred. Appellant's appeal of the OER was partially successful but did not in the end alter the overall rating of unsatisfactory performance or the recommendation therein that he should not be promoted. It appears that no administrative action was taken adverse to Appellant's continued service on active duty in the Army. When charges were preferred in this case, Appellant had nineteen years total service and was therefore close to eligibility for retirement.

During the defense sentencing case, three colonels and two retired major generals testified to Appellant's excellent duty performance and his high rehabilitative potential. One colonel testified that he had personally nominated Appellant for the General Douglas MacArthur Leadership Award, which Appellant received in 2007. A clinical social worker who was a facilitator for Family Behavioral Health Services described Appellant's participation in and completion of a therapeutic parenting program and group therapy and

opined that he had high rehabilitative potential. Appellant made an unsworn statement. After the prosecution objected to defense sentencing exhibits, Appellant asked the military judge to relax the rules of evidence. The military judge granted the request, and the offered exhibits were admitted.

During rebuttal, the Government offered into evidence a GOMOR Appellant received for engaging in a sexual relationship with an Army enlisted woman, the victim's mother, who had since become Appellant's wife. The charge sheet had initially included this offense, charged as a violation of an Army regulation under Article 92, UCMJ, 10 U.S.C. § 892 (2012), but it was withdrawn three days before Appellant was arraigned.

The GOMOR read, in part:

> Your decision to fraternize and engage in an inappropriate relationship with an enlisted person indicates a serious lack of judgment and responsibility. You have failed to live up to the Army values and you have betrayed our trust. *I have serious doubts regarding your ability for continued service in the United States Army*. I am profoundly disappointed that a commissioned officer would engage in this type of misconduct. You have fallen short of the high standards expected of you as a Soldier. Furthermore, I expect my commissioned officers to lead by example and conduct themselves in a professional manner at all times. Your actions have brought discredit upon you, your unit, and the United States Army.

(Emphasis added.)

In the GOMOR, Major General (MG) Warren E. Phipps Jr. stated that the reprimand was imposed as an administrative measure under AR 600-37,[1] not as a punitive measure under the UCMJ, and that he had not yet determined whether he would file the reprimand and, if so, where. He granted Appellant seven days to submit a rebuttal. Appellant's military defense counsel submitted a request for an extension of time to respond, which would have expired three days after the court-martial concluded. There is no ev-

---

[1] Dep't of the Army, Reg. 600-37, Personnel-General, Unfavorable Information (Dec. 19, 1986).

idence of record to establish whether MG Phipps granted the extension or, if not, whether he made a final decision on filing the GOMOR. However, the Government has not asserted that an extension was not granted, and we will assume for these purposes that it was.

Appellant objected to the admission of the GOMOR as not complying with the requirements of Rule for Courts-Martial 1001(b)(2), because it was not yet part of Appellant's personnel records: "there is the possibility that [the GOMOR] may be torn up by the general pending [Appellant's] rebuttal." Appellant further argued that the admission of the GOMOR would violate Military Rules of Evidence (M.R.E.) 401 and 403.

The military judge overruled the M.R.E. 403 objection without explanation. She concluded that the GOMOR was "proper rebuttal, specifically with regard to rehabilitative potential," but made no analysis on the record. In surrebuttal, the military judge admitted a copy of the defense counsel's letter requesting an extension to respond to the GOMOR.

### III. Discussion

We review the military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017). "A military judge abuses [her] discretion if [her] findings of fact are clearly erroneous or [her] conclusions of law are incorrect." *United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017) (alterations in original) (internal quotation marks omitted) (citation omitted).

"No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial … in reaching the findings or sentence in any case …." Article 37(a), UCMJ, 10 U.S.C. § 837(a) (2012). We review questions of unlawful influence de novo. *See United States v. Chikaka*, 76 M.J. 310, 313 (C.A.A.F. 2017). This Court has been particularly vigilant where the attempt to unlawfully influence the results of the court-martial involves an accused's commanding officer. *See id.*; *United States v. Cherry*, 31 M.J. 1, 5 (C.M.A. 1990); *United States v. Ohrt*, 28 M.J. 301, 303 (C.M.A. 1989). "The question of appropri-

ateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness." *Ohrt*, 28 M.J. at 305.

In this case, Appellant was initially charged with wrongfully engaging in a sexual relationship with an Army enlisted woman. The convening authority withdrew that charge from trial three days before arraignment. Nevertheless, after arraignment, a different general officer decided to issue the GOMOR to Appellant for the same conduct, with an explicit suggestion that Appellant was not fit for continued service in the Army. Moreover, the GOMOR was admitted into evidence without the normal due process required by Army regulations, viz., Appellant's exercise of his right to rebuttal. Under the circumstances of this case, we hold that the commander's opinion that Appellant was unfit for continued military service—essentially, a recommendation that he be dismissed from the service—invaded the province of the members of the court-martial. Therefore, the military judge abused her discretion by admitting it into evidence.

Having found error, we must determine whether "the error materially prejudice[d] the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012). We hold that it does.

The standard for determining prejudice in cases in which the military judge has abused her discretion by admitting or excluding sentencing evidence appears to be linked to whether the evidence has constitutional implications. In *United States v. Griggs*, the military judge excluded portions of six character letters offered by the defense during the sentencing proceeding, based on the prosecution's claim that they would mislead the court members "into thinking they are making a retention decision versus a decision of a punitive discharge." 61 M.J. 402, 406 (C.A.A.F. 2005) (internal quotation marks omitted). We applied the harmless error standard for nonconstitutional issues and concluded that "the excluded evidence may have substantially influenced the adjudged sentence in Appellant's case." *Id.* at 410.

On the other hand, in *United States v. Pope*, we reviewed the military judge's decision to admit a letter from the appellant's commander during sentencing, which suggested harsh

punishment was appropriate for the type of offenses the appellant had been convicted of committing. 63 M.J. 68, 75 (C.A.A.F. 2006). We noted that, while the letter did "not suggest that one convicted of this type of misconduct should be punitively separated, the appearance of improperly influencing the court-martial proceedings is troubling because it conveys the command's view that harsh action should be taken against an accused." *Id.* at 76 (internal quotation marks omitted) (citation omitted). In that case, we applied the constitutional harmless beyond a reasonable doubt standard. *Id.*

Application of the harmless beyond a reasonable doubt standard is consistent with this Court's position that unlawfully influencing a court-martial raises constitutional due process concerns where, as here, it undermines an accused's right to a fair trial. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013). " '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (quoting *Chapman v. California,* 386 U.S. 18, 24 (1967)). To conclude that such an error is harmless beyond a reasonable doubt, we must be convinced that the error did not contribute to the sentence. *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016).

Ultimately, we need not definitively determine the appropriate standard in this case, as the outcome is the same. The Government failed to establish that the error was harmless, let alone harmless beyond a reasonable doubt.

At the time of trial, Appellant was forty-one years old, had nine children, and had served in the Army for nineteen years, mostly as a reservist. After the terrorist attack of September 11, 2001, he volunteered to deploy to the combat zone in the Middle East. Upon his return from deployment, he became a medical retention company commander. In contrast to the media reports and investigative findings of serious neglect in other medical retention units, Appellant was awarded the General Douglas MacArthur Leadership Award for his outstanding care for wounded warriors. When charges were preferred, his own medical evaluation board for in-

juries sustained during combat in Iraq, which might have resulted in retirement for disability, was stopped.

This was a case tried to a panel of officer members. Appellant exercised his right to rebut the uncomplimentary OER and was partially successful; his rebuttal was before the members. In the case of the GOMOR, however, it was not. MG Phipps's opinion that Appellant was unfit for further service was placed before the members even though Appellant had not been afforded the full opportunity to submit a rebuttal for the general's consideration. The military judge admitted the GOMOR over the defense's M.R.E. 403 objection without providing any real explanation of her ruling on the record. Under the circumstances of this case, the Government failed to establish that the GOMOR did not substantially influence the sentence.

## IV. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed as to the findings but reversed as to the sentence. The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals, which may reassess the sentence or order a rehearing on the sentence.

Judge OHLSON, with whom Judge RYAN joins, dissenting.

I agree with the majority that the military judge erred in admitting the General Officer Memorandum of Reprimand (GOMOR). However, the appropriate test for prejudice due to the erroneous admission of evidence during sentencing is whether it "substantially influenced the adjudged sentence." *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005). Because I conclude that the military judge's error did not substantially influence the sentence imposed on Appellant, I respectfully dissent.

My conclusion in this case is based on several factors. First, the GOMOR was only offered during rebuttal and neither the Government nor the defense mentioned the GOMOR in their sentencing arguments. Instead, the Government focused on the underlying offense and on Appellant's highly negative Officer Evaluation Report (OER) which is discussed immediately below. Therefore, the GOMOR's role in the Government's sentencing case was quite limited.

Second, the OER—which was properly admitted into evidence during sentencing—was particularly damaging to Appellant's case and presumably weighed far more heavily in the minds of the panel members than the GOMOR did. Three different raters painted a harshly negative picture of Appellant's performance by stating, among other things, that Appellant:

- should not be promoted;

- engaged in "unsatisfactory performance during combat operations";

- "repeatedly made false statements and made attempts to manipulate events in his favor";

-  "spent his time primarily on actions that served self rather than the mission";

- demonstrated behavior that did "not meet the expectations of any Soldier, let alone a field grade

officer, and [stood] in direct contradiction with the Army Values" of honor, integrity, and selfless service;

- "failed to transition effectively to the rank, responsibility, and capability required of a junior Field Grade Officer";

- did not possess the mental and emotional attributes of a leader;

- failed in the leadership actions of communicating, decision-making, planning, executing, building, and motivating; and

- was ranked number 58 out of 58 majors rated by the senior rater.

These statements, in both content and quantity, completely overwhelmed the negative sentiments expressed in the GOMOR about Appellant's alleged fraternization. Indeed, this case is similar to *United States v. Bridges*, 66 M.J. 246 (C.A.A.F. 2008), where this Court considered whether the admission of a letter from the officer in charge of the brig where the appellant had been in pretrial confinement was prejudicial to the appellant's sentence. We held that there was no prejudice because the record contained ample additional evidence in aggravation. *Id.* at 248.

Third, it was evident on the face of the document that no filing determination had yet been made about the GOMOR. On the other hand, the OER, despite Appellant's appeal, was fully filed and part of Appellant's Official Permanent Military File.[1]

Fourth, any reference to fraternization in the GOMOR was completely overshadowed by the offense of which

---

[1] The Officer Special Review Board declined to follow the recommendation of the III Corps Commanding General (who was not in Appellant's chain of command) to remove the OER from Appellant's file because there was no clear and convincing evidence supporting its removal.

Appellant was convicted. Appellant was found guilty of beating his three-year-old stepson with a belt and inflicting wounds that resulted in significant bruising and a trip to the emergency room. As reflected in *United States v. Sanders*, 67 M.J. 344 (C.A.A.F. 2009), it is appropriate for this Court to consider the severity of an appellant's crimes in assessing prejudice. In *Sanders*, the appellant was convicted of forcible sodomy, assault, and indecent assault. *Id.* at 344. The military judge admitted into evidence a handwritten letter found in the appellant's cell as evidence of a lack of rehabilitative potential. *Id.* at 345. This Court concluded that if there was error in the admission of the letter, the alleged error was not prejudicial because of the severity of the appellant's crimes. *Id.* at 346. Appellant's crime is similarly severe.

And finally, photographs of the injuries inflicted on Appellant's toddler stepson were admitted into evidence. These photographs depict bruising, welts, and abrasions that covered practically the child's entire body. Additionally, the panel heard evidence that Appellant lied about the source of these injuries, falsely claiming that his stepson was injured by an accidental fall or a dog bite and that he never used a belt to spank his children. It is not difficult to fathom that the panel concluded that the severity of the beating and Appellant's mendacity about its circumstances—standing alone—warranted the sentence imposed on Appellant. Moreover, Appellant's position was further severely undermined by the devastating comments made by his raters in his OER.[2] Thus, although it clearly was error for the military judge to admit the GOMOR pertaining to Appellant's alleged fraternization, that error was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F.

---

[2] The sentencing witnesses who testified to Appellant's "excellent duty performance" could only speak to Appellant's service ranging from 2005 to 2008. The OER reflected Appellant's more recent service record in 2011.

2007) (internal quotation marks omitted) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)).

For the reasons cited above, I conclude that the erroneous admission of the GOMOR did not "substantially influence[]" Appellant's sentence. *Griggs,* 61 M.J. at 410. Accordingly, I would affirm the decision of the United States Army Court of Criminal Appeals in this case and I respectfully dissent.